UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMBER McCRAY,

                  Petitioner,

v.

UNITED STATES OF AMERICA,

                  Respondent.
_____/

Criminal Case Number 03-20030
Civil Case Number 04-10286
Honorable David M. Lawson

## **OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE**

The petitioner, Amber McCray, was convicted of assaulting Jason Wixson, an Indian, with a dangerous weapon and with intent to do bodily harm, within the confines of the Saginaw Chippewa Indian Tribe reservation, in violation of 18 U.S.C. §§ 113(a)(3) and 1152, based upon her plea of *nolo conterdere*. The plea was made under an agreement that provided in part that the sentence would not exceed the midpoint of the applicable Sentencing Guideline range as determined by the Court. On May 10, 2004, the petitioner was sentenced to 37 months in custody to be followed by three years of supervised release. She did not appeal her conviction or sentence. Now before the Court is the petitioner's timely-filed motion to vacate the sentence pursuant to 28 U.S.C. § 2255 in which she alleges that her counsel was constitutionally ineffective because he coerced her into an unsigned plea; failed to object to her juvenile record; failed to locate witnesses; failed to argue that the petitioner had a diminished mental capacity; and failed to file a notice of appeal. The Court finds that these claims are without merit and therefore will deny the motion to vacate sentence.

I.

The petitioner was first charged in a criminal complaint on June 6, 2003 alleging that she repeatedly stabbed Jason Wixson, a Native American, at his residence located within the confines

of Indian country. Gary Crews was appointed to represent the petitioner under the Criminal Justice Act. The petitioner was released on bond, and a grand jury indicted her on June 18, 2003 in a single-count indictment alleging the assault within the confines of Indian country as violating 18 U.S.C. §§ 113(a)(3) and 1152. A superseding indictment was filed on August 27, 2003.

The petitioner entered a *nolo contendere* plea to the single count superseding indictment pursuant to a Rule 11 plea agreement on October 30, 2003. Attached to the plea agreement was the government's Sentencing Guidelines worksheet, which anticipated an offense level of 20 (which included a three-level reduction for acceptance of responsibility) and a criminal history category of I, yielding a sentencing range of 33 to 41 months. The agreement limited the prison sentence to the midpoint of the range determined by the Court, which would have been 37 months according to the government's estimate. The petitioner stated on the record that she understood the terms of the plea agreement, the maximum penalty of up to ten years in custody, and the court would make the final determination about how the guidelines were scored after the probation department prepared a presentence report. The Court explained that the estimate made by the government and Mr. Crews could be different than what the court eventually determined, and the Court's determination would control. The petitioner said she understood.

At the hearing, the government offered evidence to show that the petitioner and Jason Wixson were in a relationship and early one morning they were together in Wixson's mobile home trailer with another individual, Robert Woolsey. The petitioner got into an argument with Wixson and stabbed him with a steak knife. Woolsey ran to a neighbor's house and called 911. When Woolsey returned to Wixson's house, the petitioner complained that he should not have called the police because everything was going to be okay. The police arrived at the scene and found the

petitioner and Wixson in the shower together where it appears that the petitioner was helping Wixson clean his wounds.

During the plea hearing, McCray told the Court that she was satisfied with Mr. Crews's advice and services. Plea Tr. at 13. McCray confirmed that she had spoken with Mr. Crews regarding the terms of the plea agreement, all of her questions had been answered, and she asserted that she understood all the rights she was giving. She also confirmed that she had signed the written plea agreement.

The Court accepted the plea.

The probation department completed the presentence report (PSR) on December 16, 2003. The probation officer discovered two juvenile convictions and an adult conviction, which earned the petitioner three criminal history points and put her in criminal history category II. The offense level was the predicted 20, and the resulting sentencing range was 37 to 46 months. Neither party objected to the PSR. However, on January 7, 2004, Mr. Crews filed a motion for downward departure , which the government opposed. The motion was based on a combination of mitigating factors, including that (1) the petitioner was only eighteen years of age when she committed the offense; (2) the petitioner suffered from alcohol dependency, anxiety, and depression and therefore her mental state was not as culpable as a person with all of her faculties intact; (3) the petitioner was physically and emotionally abused as a child; (4) the petitioner had lived a nomadic lifestyle since August 2002; (5) the victim, Jason Wixson, had discounted the seriousness of the offense; and (6) the petitioner was remorseful after committing the offense and attempted to help the victim.

At the sentencing hearing held on February 24, 2004, the Court found that the sentencing range was as stated in the PSR. Defense counsel argued for a downward departure but raised a new

basis for departure not discussed in his written motion or brief. The Court then adjourned the hearing to allow defense counsel to brief his new basis for departure and to allow the government time to respond.

Mr. Crews filed a supplemental motion for downward departure on March 2, 2004 in which the petitioner contended that the victim's conduct justified a downward departure under U.S.S.G. § 5K2.10. The petitioner also argued that § 5K2.12, coercion and duress, and the combination of §§ 5K2.10 and 5K2.12 warranted a downward departure pursuant to § 5K2.0(c). Finally, the petitioner argued that an additional basis for downward departure existed because of the petitioner's post-plea rehabilitation. The government filed an answer in opposition to the supplemental motion.

On April 28, 2004, the Court revoked the petitioner's bond after a hearing in which it was shown that the petitioner had been issued a ticked on April 7, 2004 for being a minor in possession of alcohol, second offense, by the Kentwood, Michigan police department. At the continued sentencing hearing, the government called Trooper Dillon, Trooper Pietrantonio and Detective Sergeant Henke as witnesses, who had responded to the scene on the day of the incident. They testified that the petitioner was intoxicated and in a highly emotional state; there was blood on the floor of the residence; they followed the blood trail into the bathroom where the petitioner was washing blood stains from the victim, who had multiple stab wounds. The petitioner did not appear to be injured.

The Court reiterated the sentencing range of 37 to 46 months, found that the facts did not warrant a downward departure on any of the petitioner's asserted grounds, and imposed a sentence of 37 months in custody, recommending that the petitioner be designated to an institution by the

Bureau of Prisons with a comprehensive drug treatment program to address the petitioner's severe alcohol abuse.

II.

Two of the grounds the petitioner offers in support of her ineffective assistance of counsel claim, that counsel failed to locate witnesses and failed to argue that the petitioner had a diminished mental capacity, appear to be directed to defense counsel's pretrial (pre-plea) preparation. However, it is well established that a valid guilty or *nolo contendere* plea in a criminal proceeding generally forecloses claims arising from the alleged deprivation of constitutional rights occurring before the entry of the plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Simply stated, a defendant who pleads guilty or *nolo contendere* generally waives any non-jurisdictional claims that arose before his plea. *See United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001); *Siebert v. Jackson*, 205 F. Supp. 2d 727, 733-34 (E.D. Mich. 2002). In such a case, the Court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *See Broce*, 488 U.S. at 569. Therefore, the petitioner's ineffective assistance claims concerning defense counsel's conduct in investigating her case and challenging the evidence before trial are foreclosed by the petitioner's *nolo contendere* plea to assault.

As to the balance of her claims, the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that her attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty or *nolo contendere* plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Carter v. Collins*, 918

F.2d 1198, 1200 (5th Cir. 1990). The first prong of the test remains the same. *Ibid.* However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, the defendant must show "that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded [*nolo contendere*] and would have insisted on going to trial." *Ibid.*; *Carter*, 918 F.2d at 1200; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

The petitioner asserts that she was coerced into entering an unsigned plea agreement, and then when her expanded criminal history was revealed in the PSR, she was coerced into entering a second plea with a higher cap. Neither of these claims is supported by the record, and there is no suggestion that the process of negotiating and entering the plea involved deficient performance by defense counsel.

At the outset, the Court notes that the petitioner's sentence fell within the cap generated by the original estimate, even though the range ultimately determined by the Court turned out to be higher. Moreover, the petitioner's statements during the plea colloquy undermine any suggestion that her plea was coerced:

> THE COURT: And have you received a copy of the superseding indictment in this case?
>
> A. Yes.
>
> THE COURT: Do you know what that is?
>
> A. Yes.
>
> THE COURT: All right. That contains the charge against you; have you discussed those charges with Mr. Crews?
>
> A. Yes.

THE COURT: Has he told you what the government must prove in order to convict you of that charge?

A. Yes.

THE COURT: Have you talked about possible defenses that you might raise if you went to trial?

A. Yes.

THE COURT: Has he explained to you that there is a defense of intoxication that might be able to be raised concerning your intent to do whatever it is you did on that day?

A. Yes.

THE COURT: And do you understand what would have to be shown by the government in order to overcome that defense?

A. Yes.

THE COURT: Have you talked about the relative advantages and disadvantages of pleading guilty versus going to trial?

A. Can you say that again.

THE COURT. Sure. Did you talk about how you might – what the benefits and what the burdens of going to trial might bring to you?

A. Yes.

THE COURT: Did you talk about the benefits and burdens of entering a guilty plea or no contest plea?

A. Yes.

THE COURT: Have you decided that it is in your own best interest to resolve this case by pleading no contest instead of going to trial?

A. Yes.

THE COURT: Are you satisfied with Mr. Crews' advice and the services he has given to you thus far?

> A. Yes.
>
> THE COURT: All right. Now I have this agreement called Rule 11 agreement, it's marked as government's exhibit 1 here. Have you read through that with Mr. Crews?
>
> A. I think so.
>
> THE COURT: All right. Do you have a copy there?
>
> A. I signed this.
>
> THE COURT: Yes. Now did you sign it on page 9, is that your signature?
>
> A: Yeah.
>
> THE COURT: All right. Before you signed it, did you go through that with Mr. Crews?
>
> A. Yes.
>
> THE COURT: Now, Mr. Crews negotiated with Mr. Brunson, the Assistant United States Attorney, to reach this agreement; do you understand that?
>
> A. Yes.
>
> THE COURT: Did the negotiations that led to this agreement result in your willingness to enter this no contest plea?
>
> A. Yeah.

Plea Tr. at 11-14.

The affidavit filed by defense counsel is consistent with the petitioner's acknowledgments on the record noted above. He says that he met with the petitioner, explained the charges, reviewed the evidence, discussed possible defenses, and answered her questions about the proceedings. That performance is not deficient. The petitioner's claim that Mr. Crews "failed to inform the court of the Youth Act involved" provoked the attorney for the government to suggest that McCray's petition

was drafted with the assistance of "jailhouse counsel" unfamiliar with federal law, since there is no such statute applicable in McCray's case. The Court suspects government counsel is correct.

The Court finds that the petitioner's attorney performed well within the bounds of prevailing professional norms. He presented an exhaustive array of downward departure motions and pursued them through multiple hearings.

The petitioner also contends that defense counsel did not file a notice of appeal. However, defense counsel averred in his affidavit that he discussed the petitioner's appeal rights with her and she said she did not want to appeal. Moreover, her appeal rights were severely curtailed by the waiver in the plea agreement, and the petitioner has not identified any ground in her motion that would have been the proper subject of an appeal.

The Court finds that the petitioner has established neither deficient performance on the part of Mr. Crews nor prejudice. Her motion to vacate sentence on the ground of ineffective assistance of counsel, therefore, will be denied.

### III.

The petitioner also argues that she did not voluntarily enter her no contest plea. She contends that the sentencing cap that ultimately was determined was different than the one stated in the government's Sentencing Guidelines worksheets attached to the plea agreement, so she assumes another plea agreement was given to her. If she seems to be confused about that fact now, it is plain that she understood the process by which the Sentencing Guidelines range was determined at the time of the plea and sentence. Moreover, the petitioner's challenge to the voluntariness of her plea is an issue that should have been raised on direct appeal.

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). In *United States v. Frady*, 456 U.S. 152 (1982), the Supreme Court observed:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims in a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.

*Id.* at 164-65. *Accord Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (stating that "respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal"). Where a defendant fails to assert claims on direct appeal and attempts to raise them in a § 2255 motion, "he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528.

The petitioner has not shown cause for her failure to raise the sentencing issue on direct appeal. Nor does the record demonstrate prejudice. As noted earlier, the sentence cap based on the original estimate was the midpoint of the government's estimated range of 33 to 41 months, which is 37 months. The petitioner was sentenced to that term – 37 months – which happened to be the bottom end of the guidelines range determined by the Court. Moreover, the petitioner waived her

right to appeal her conviction if the sentence was at or below the agreed cap. As a consequence, the petitioner cannot demonstrate either of the elements necessary to avoid the exhaustion bar.

IV.

The Court finds no merit to the grounds for relief stated in the petitioner's motion to vacate the sentence.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate her sentence [dkt # 34] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: June 25, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 25, 2007.

s/Felicia M. Moses
FELICIA M. MOSES